# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN C. KASZUBA,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:16-1239** |
| **v.** | : | **(JUDGE MANNION)** |
| **BOROUGH OF DICKSON CITY,** *et al.,* | : | |
| | : | |
| **Defendants** | | |

## MEMORANDUM

Presently before the court is the defendants' motion for summary judgment brought pursuant to Fed.R.Civ.P. 56. (Doc. 23). Plaintiff Brian Kaszuba was an employee of defendant Borough of Dickson City (the "Borough") and worked for the Borough's Department of Public Works ("DPW"). Plaintiff was also the union steward. Plaintiff along with another person created a Facebook Page and he anonymously posted critical opinions about a new Borough building project and about Council Members. Plaintiff also opposed a Borough policy which restricted DPW employees access to the new Borough building only for official business during work hours. After a heated altercation with the Borough Manager, plaintiff was suspended and placed on paid administrative leave. Subsequently, Borough Council terminated plaintiff. Plaintiff filed this civil rights action under 42 U.S.C. §1983 alleging that he was terminated as retaliation for exercising his First Amendment rights. Based on the following, the court will **GRANT** defendants' summary judgment motion.

## I. PROCEDURAL HISTORY

This case was commenced on June 22, 2016 when the plaintiff filed his complaint against the Borough and the following Borough Council Members, Michael Fedorka, Robert Hall, Rose Louryk, Rick Cesari, Jack Horvath, Jeffrey Kovaleski and Barbara Mecca (collectively "Council Members"). (Doc. 1). Plaintiff sues the Council Members in their individual capacities and alleges that these members approved his termination. Plaintiff raises three counts which allege that defendants retaliated against him for exercising his First Amendment rights in violation of §1983. In particular, plaintiff alleges that he was terminated by defendants as retaliation for engaging in protected activity, such as union matters and union association, posting on Facebook, political activity, and speaking out on public matters at Council meetings, including the handling of the new Borough building project.

The defendants filed a motion for summary judgment under Fed.R.Civ.P. 56 together with a statement of facts and exhibits on July 20, 2017. (Doc. 23). They also filed a brief in support of their motion. On July 26, 2017, plaintiff filed his brief in opposition with exhibits, and his response to the defendants' statement of facts. (Docs. 25-28). The defendants filed their reply brief on August 8, 2017. (Doc. 29).

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiff avers violations of his First Amendment rights under the U.S. Constitution. Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all

2

parties are located here. *See* 28 U.S.C. §1391.

## II.    MATERIAL FACTS[1]

This case arose when the defendant Council Members terminated the plaintiff on November 20, 2014 from his position as Borough DPW foreman.

The plaintiff was originally hired by the Borough in June 1992 and worked for its DPW. In October of 2014, plaintiff became the DPW foreman and he performed work as a mechanic, mainly in DPW's garage on Enterprise Street.

Earlier in October 2003, the DPW workers unionized and joined the Teamsters Local 229. Plaintiff became the union steward when the DPW workers joined the union and remained the union steward until his termination in November 2014.

Plaintiff's union duties included investigating potential grievances for the other DPW workers and, if they could not be settled file grievances for them. Plaintiff would submit grievances to the Borough Manager, Ches Forconi, his superior.

The Borough eventually bought a building and planned to relocate and consolidate all of its administrative offices, management, and DPW workers

---

[1]All exhibits pertaining to the material facts are attached to the defendants' statement of facts, (Doc. 23), and to the plaintiff's brief in opposition, (Docs. 25-27).The court only states the facts that are material to the issues at hand. Legal conclusions, background facts, allegations and arguments will not be included.

into the new Borough building. During the renovations to the new Borough building, there were problems, including roof leaks and improperly installed garage doors. In early 2014, plaintiff began attending Borough Council meetings to inquire about the new Borough building and express his opinions regarding the renovations and criticisms of the project. The last Borough Council meeting which plaintiff attended, before his suspension and eventual termination, was in September 2014.

Before October 16, 2014, plaintiff was aware that he was not allowed to go into the new Borough building for non-work related or non-union-related business during normal work hours. Plaintiff claims that Forconi singled him out using a directive from Council to prohibit him from going into the new building except for official business. Also, prior to October 16, 2014, plaintiff and an unidentified person created a Facebook Page called Dickson City Deception. On the Facebook Page, plaintiff posted his opinions regarding the progress of the renovations, his discontent with both the work being performed and with the Council Members. Prior to October 16, 2014, all of the posts on the Facebook Page were anonymous, with plaintiff never identifying himself by name or revealing that he was posting the comments. However, plaintiff believed that it was common knowledge that he was behind the Facebook Page. There appears to be no evidence that the Council Members knew who was actually behind the Facebook Page prior to plaintiff identifying himself as one of the authors, on October 20, 2014. Plaintiff was also unaware if Forconi knew that he was responsible for the Facebook Page prior

to October 20, 2014.

Plaintiff alleges that he engaged in political activity by openly displaying signs on his truck for the Council candidates he was supporting, namely, Paul Kwiec, Sarah Edwards and Kim Ledora. Council President, Barbara Mecca, was unaware that plaintiff displayed these political signs on his truck, nor did she know if plaintiff supported her in the 2013 Council election. Louryk was aware that plaintiff displayed signs for her opponents on his truck. Fedorka saw plaintiff display political signs on his truck, but it was not during a year that he was running for election. Further, there is no evidence that the other four Council Members were aware of plaintiff's political affiliation or the display of political signs on his truck.

On October 16, 2014, John Lukasik, plaintiff's supervisor, told plaintiff that "Ches [Forconi] informed me that he doesn't want you up at the borough building unless it's for official business." The parties dispute whether Forconi's order, at that time, was directed to all DPW workers or whether plaintiff was singled out as the only DPW worker who was not allowed in the new building. Plaintiff immediately went to meet with Forconi to determine what was meant by it. Plaintiff then spoke with Forconi who told plaintiff that he would provide a written policy setting forth the directive as soon as it was typed up. Plaintiff returned to the DPW garage and contacted his union representative.

After speaking with his union representative, plaintiff prepared a grievance alleging violations of Article 30 of the CBA, i.e., the discrimination clause. Plaintiff then went to the new Borough building to

5

investigate his grievance. There, he spoke with the administrative staff regarding whether the directive was limited to him or whether it applied to all DPW employees. Plaintiff was told by staff that they thought the directive applied to all DPW employees.

Plaintiff then spoke again with Forconi on October 16, 2014 in his office and Forconi confirmed that the policy was for all DPW employees and not just for him. During their conversation, plaintiff admitted that he was irritated with Forconi and that he raised his voice. According to Plaintiff they both were getting agitated. Plaintiff ultimately walked away and yelled "you don't even have the balls to stand up for me. You're the one that told me to come down here the day before. This is fucking bullshit, and [he] walked out."

Forconi alleges to have became nervous over the encounter as plaintiff got very close to him. Forconi believed that there was a possibility of some type of physical altercation with the plaintiff. Plaintiff admitted that his behavior was heated during the encounter with Forconi and not acceptable workplace conduct for an employee toward his boss. Later on October 16, 2014, plaintiff returned to Forconi's office in the new Borough building with Borough police officer Phil Davitt to file a grievance.

On October 17, 2014, plaintiff was suspended and placed on paid administrative leave. The parties dispute whether plaintiff was suspended due to his altercation with Forconi or whether it was due to his criticisms about the Borough and Council Members as well as his other alleged protected activities. This dispute is the crux of this case. Forconi testified that plaintiff

was ultimately fired by Council because of his insubordination. Forconi also stated that the argument he and plaintiff had "was not a good thing" "but that [it] was not the cause of [plaintiff's] termination." Plaintiff was notified of his suspension in a letter dated October 17, 2017, and it advised him that he "must remain available to appear for employment interviews during normal working hours."

After the incident between plaintiff and Forconi, Mecca contacted Borough Police Chief Bilinski to "look into it" since "there was yelling", "there was cursing", and "it seemed very hostile." Chief Bilinski wanted to obtain statements from everyone involved in the incident, and told Mecca that "if there were going to be any kind of criminal charges, it has to be turned over to the District Attorney's office." The Chief also told Mecca that he needed statements in order for the District Attorney to determine if any criminal charges were warranted. Chief Bilinski then directed the involved parties to prepare their own statements about the incident. He stated that he had to look at the incident "from the criminal aspect first, whether there was a crime being committed." Chief Bilinski also testified that the purpose of the witness statements "were in the event that [plaintiff's altercation with Forconi] became a criminal matter."

Chief Bilinski asked plaintiff to come for an interview on the next day to which plaintiff called the Chief back and said that he would not be meeting the Chief since he filed a grievance which the Borough had to answer, and that he was advised by his union representative not to meet with him. Chief

Bilinski again called plaintiff on October 28, 2014, advising plaintiff to meet him at the Borough building at 10:00 a.m. that day for an "employee interview." Plaintiff again advised the Chief he would not be attending on advice of his union representative.

Plaintiff's union representative then informed plaintiff that the Chief had rescheduled his interview for 2:00 p.m. on October 28, 2014. Before the Chief could call plaintiff to advise him of the rescheduled meeting, plaintiff called the Chief and told him that he would not be able to attend the meeting.

Plaintiff originally testified that he was not notified of the employee interview until after it was scheduled to start. However, after plaintiff reviewed his notes and timeline from discussions with Chief Bilinski, he admitted that he knew an interview had been scheduled for October 28, 2014, and that he refused to show up for it. Plaintiff also points out that he set up his own meeting with Borough Council to discuss the incident with Forconi but it was cancelled by Council President Mecca. He also stated that he acted on his attorney's advice when he did not attend the interviews.

On October 28, 2014, Forconi prepared a letter addressed to plaintiff notifying him that his employment interview was rescheduled for October 29, 2014 at 10:00 a.m. and advising him of his *Garrity* and *Weingarten* rights.[2]

---

[2] *See* Com., Office of Admin. v. Pa. Labor Relations Bd., 591 Pa. 176, 916 A.2d 541 (2007) (The PA Supreme Court stated that a public employee's *Weingarten* right was "the right to be accompanied by a union representative during an interview in which the employee reasonably fears that discipline may be imposed by the employer." (citing National Labor Relations Board v. J. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959 (1975)).

Forconi stated that plaintiff had the right to have a union representative with him during the interview and that "[t]his meeting is for employment purposes only and will not be used in any criminal investigation or charges against you." Chief Bilinski left plaintiff a voice mail message on his home phone stating that he was dropping off a letter for plaintiff from the Borough at plaintiff's house on October 28th. Since plaintiff did not answer his door at his house when the Chief knocked, the Chief taped the letter to plaintiff's front door.

Plaintiff failed to appear on October 29, 2014 for his rescheduled interview. Plaintiff later testified that his actions were based on legal counsel's advice. Plaintiff does not contend, nor does he produce any evidence to show, that he was prevented by defendants from bringing his attorney or his union representative with him to any of the interviews that were scheduled.

On October 29, 2014, Forconi sent plaintiff another letter advising him that his failure to appear for the rescheduled interview constituted "a second serious act of insubordination" and stating that "[a]s a result of your actions,

---

The Supreme Court decision in Garrity v. New Jersey, 385 U.S. 493 (1967), and its progeny, provide that a government employee can be compelled to respond to questions about performance of job duties if his responses will not be used against him in a subsequent criminal proceeding. See Sher v. U.S. Dept. Of Veterans Affairs, 488 F.3d 489, 501 (1st Cir. 2007) (("[T]ogether, *Garrity* and Gardner [v. Broderick, 392 U.S. 273, 278, 88 S.Ct. 1913 (1968)] stand for the proposition that a government employee who has been threatened with an adverse employment action by her employer for failure to answer questions put to her by her employer receives immunity from the use of her statements or their fruits in subsequent criminal proceedings, and, consequently, may be subject to such an adverse employment action for remaining silent.").

I will be recommending a multi-day unpaid suspension." The letter also advised plaintiff that his interview was being rescheduled again for the same day, October 29, 2014, at 3:00 p.m., that he could bring a union representative, that the meeting was for employment purposes only and not for use in any criminal investigation, and that if he failed to appear at this time he "will be recommended for termination." Nonetheless, plaintiff did not appear for interview at 3:00 p.m. on October 29, 2014.

On October 30, 2014, Forconi sent plaintiff a third letter regarding a *"Loudermill* Notice."[3] The letter summarized the October 16, 2014 incident between Forconi and plaintiff. The letter also stated the potential disciplinary action against plaintiff and the basis for Forconi's recommendation for plaintiff's termination, and it gave plaintiff an opportunity to provide Forconi with "any information that would cause [Forconi] to reconsider taking disciplinary action . . . [or] modify the level of disciplinary action . . ." However, plaintiff did not provide any additional information to Forconi in response to his October 30, 2014 letter.

On November 12, 2014, Forconi sent plaintiff another letter notifying him that he was suspended without pay with intent to terminate. In this letter, Forconi advised plaintiff that he would be asking Borough Council to terminate plaintiff's employment at the Council's November 20, 2014 meeting. The letter

---

[3]*See* Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487 (1985).

again recounted the October 16, 2014 incident and also stated the basis for Forconi's recommendation for plaintiff's termination and that "[t]he Borough cannot employ an individual who picks and chooses what directives he wants to follow and when he wants to follow them."

At its November 20, 2014 meeting, the Borough Council unanimously voted to terminate plaintiff immediately and read a prepared statement. The statement was included in the November 20, 2014 Council meeting minutes and it specifies the reasons for plaintiff's termination. (Doc. 23-9 at 14-15). The statement referenced plaintiff's "flagrant insubordination" and stated, in part, that: "No employer can afford to employ an individual who picks and chooses what directives he wants to follow or when he wants to follow them. No employer can be expected to tolerate an employee who refuses to attend a meeting, with his attorney present, to explain why, in front of co-workers and outsiders, he screamed and cursed at his supervisor." On November 21, 2014, Mecca sent plaintiff a letter formally notifying him that his employment with the Borough was terminated.

Plaintiff then filed a grievance regarding his termination under the CBA. Since the parties could not resolve plaintiff's grievance, an arbitration hearing was held on August 18, 2015. After the hearing, the parties filed briefs and the case was submitted to the Arbitrator for a decision with respect to the issue of whether the Borough had just cause to terminate plaintiff.

On November 23, 2015, the Arbitrator issued his finding of facts and decision. The Arbitrator did not find merit to plaintiff's retaliation claim and

11

found that the Borough had no choice but to terminate Kaszuba because of his repeated refusals to appear for the employee interview. The Arbitrator denied plaintiff's grievance and found that the Borough had just cause to terminate plaintiff. Plaintiff avers in his Affidavit that he did not appeal the Arbitrator's decision. Nonetheless, on October 20, 2016, the Lackawanna Court of Common Pleas affirmed the Arbitrator's decision.

On November 23, 2014, plaintiff applied for unemployment compensation benefits. Plaintiff's application was denied. The Unemployment Compensation Board of Review ("UCBR") found that plaintiff was terminated for his failure to cooperate in the Borough's investigation regarding the October 16, 2014 incident between plaintiff and Forconi.

Plaintiff appealed the UCBR's decision to the Pennsylvania Commonwealth Court. The Commonwealth Court affirmed the UCBR's decision denying plaintiff's benefits. The Commonwealth Court found that plaintiff's failure to comply with the Borough's order to cooperate in the investigation with respect to the October 16, 2014 incident was the reason for his termination. Plaintiff did not file an appeal regarding the Commonwealth court's decision.

## III.    DISCUSSION[4]

In his complaint, plaintiff raises three First Amendment retaliation claims

---

[4]Since the parties state the correct summary judgment standard in their briefs under Rule 56, the court does not repeat it herein.

against defendants alleging that his termination was due to his political activity, his union activity, his speech at Council meetings, and the posts on his Facebook Page.

Initially, the plaintiff argues that there are facts in dispute in this case regarding his First Amendment retaliation claims rendering summary judgment inappropriate. However, the court, in dealing with the defendants' motion for summary judgment, must determine whether the "nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which he or she has the burden of proof." *Penny v. Borough of Wildwood Crest*, 28 F.Appx. 137, 138 (3d Cir. 2002)(citing *Celotex*, 477 U.S. at 323). When the nonmoving party fails to present proof concerning an essential element of a claim, all other facts, even if contested, become immaterial and irrelevant. *Id.*

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

In Noonan v. Kane, 698 Fed.Appx. 49, 52-53 (3d Cir. 2017), the Third Circuit discussed the elements of a First Amendment retaliation claim and stated:

> "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted). It "is a fact intensive inquiry focusing

13

on the status of the speaker, the status of the retaliator, the relationship between the speaker and retaliator, and the nature of the retaliatory acts." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (quotation and emphases omitted).

"Similarly, to allege a Section 1983 retaliation claim for violation of the freedom of association, Plaintiff[] 'must show that [he was] engaged in constitutionally protected conduct, which conduct was a 'substantial' or 'motivating factor' in the government employer's [adverse employment] decision." Killion v. Coffey, 2016 WL 5417193, *5 (D.N.J. Sept. 27, 2016) (citations omitted).

The defendants contend that they are entitled to summary judgment on plaintiff's claims that he was terminated as retaliation since they are barred by collateral estoppel because his grievance under CBA was denied by an arbitrator and affirmed by the county court and, because his unemployment compensation claim was denied and affirmed by Commonwealth Court. The defendants state that plaintiff raised his retaliation claims in the two prior proceedings and that despite these claims both proceedings determined that "plaintiff's termination was just and non-discriminatory." They state that since "Plaintiff has fully litigated the issue of what led to his termination in these two prior proceedings, he should be precluded re-litigating this issue in the present matter."

The court in Lohman v. Borough, 2007 WL 4260943 (M.D.Pa. Nov. 29, 2007), considered whether res judicata or collateral estoppel precluded the district court from considering plaintiff's constitutional claims under §1983

based on an arbitrator's decision denying plaintiff's grievance filed under a CBA over his termination from the Borough. The court in Lohman, id. at *3, cited to the Supreme Court case of McDonald v. City of West Branch, Michigan, 466 U.S. 284, 104 S.Ct. 1799 (1984), which held that "federal courts are not obligated to accord res judicata or collateral estoppel to an arbitrator's decision." The court in Lohman, id., then rejected the Borough defendants' argument based on res judicata and collateral estoppel and stated:

> The Supreme Court does not permit res judicata or collateral estoppel to bar a Section 1983 claim following arbitration pursuant to a collective bargaining agreement. Although the arbitrator "'decided an issue of fact or law necessary to its judgment,'" this decision does not preclude this Court from considering the Plaintiff's claims, as a collective bargaining agreement's arbitration does not create collateral estoppel or res judicata for a later Section 1983 claim. McDonald, 466 U.S. at 287 n. 5 (quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

Thus, the collateral estoppel doctrine does not preclude plaintiff Kaszuba's First Amendment retaliation claims under §1983 based on the arbitrator's decision denying his grievance under the CBA. *See Lohman, supra*.

Defendants also argue that courts in the Third Circuit have held that a Commonwealth Court's review of a determination denying plaintiff benefits made by an Unemployment Compensation Board of Review must be given preclusive effect if the other elements of collateral estoppel are satisfied.

The court in Williams v. Pennsylvania Human Relations Commission,

2016 WL 6834612 (W.D.Pa. Nov. 21, 2016), considered whether the Commonwealth Court's decision affirming the UCBR's holding denying plaintiff Williams' unemployment claim should be given preclusive effect with respect to her Title VII discrimination claims filed in federal court. The court in Williams, id. at *19, stated as follows:

> As full faith and credit requires that this Court give the same preclusive effect to the decision by the Commonwealth Court as Pennsylvania courts would, and the express provisions of the Unemployment Compensation Act provides that "[n]o finding of fact or law, judgment, conclusion or final order made with respect to a claim for unemployment compensation under this act may be deemed to be conclusive or binding in any separate or subsequent action or proceeding in another forum," 43 Pa. Stat. §829, the decision by the unemployment compensation referee ultimately affirmed by the Commonwealth Court that Williams did not leave her employment for a necessitous and compelling reason cannot be given any preclusive effect here. *See also* Mathis v. Christian Heating and Air Condition, Inc., 91 F.Supp.3d 651, 656 (E.D. Pa. 2015) (treating plaintiff's motion for clarification as one for reconsideration and departing from local rule regarding timeliness of plaintiff's motion because 43 Pa. Stat. § 829 "clearly provides that findings of fact and conclusions of law made with respect to unemployment compensation claims under Pennsylvania law do not have preclusive effect in subsequent proceedings, such as the one before [the court]."); *see also* Gilson v. Pennsylvania State Police, 175 F. Supp. 3d 528, 566 n. 31 (W.D. Pa. March 30, 2016), appeal docketed, No. 16-2144 (3d Cir. 2016); Training Assoc. Corp. v. Unemployment Comp. Bd. of Review, 101 A.3d 1225, 1234 (Pa. Commw. Ct. 2014).

The court in Williams, id. at *20, also considered one of the cases our defendants rely upon to support their argument, namely, Spyridakis v. Riesling Group, Inc., 2009 WL 3209478, (E.D.Pa. Oct. 06, 2009), aff'd 398 Fed.Appx. 793 (3d Cir. 2010). However, the court in Williams, id., explained that,

*Spyridakis* does not address the effect of 43 Pa. Stat. §829 or even reference that statute at all, addressing instead what it termed an issue of law. *Spyridakis* also acknowledged that the Third Circuit had previously concluded "that a ruling adverse to the employee in the unemployment compensation proceedings was not entitled to preclusive effect in a subsequent case asserting race discrimination claims." 398 Fed.Appx. at 798 (citing *Kelley)*. Based on the legislative enactment by the Commonwealth of Pennsylvania in 43 Pa. Stat. §829, the instruction by the Court of Appeals for the Third Circuit in *Kelley* and the Pennsylvania Supreme Court in *Allen*, this Court finds that the prior decision by the Commonwealth Court in regards to Williams' unemployment compensation claim has no preclusive effect in this matter.

Based on the above, the court finds that the Commonwealth Court's decision affirming the UCBR and its determination that plaintiff's termination was because of his own failure to appear at the employee interviews does not preclude plaintiff's instant claims under §1983 that defendants retaliated against him for exercising his First Amendment rights.

Next, defendants contend that plaintiff has failed to establish the elements necessary for a prima facie case of First Amendment retaliation and, that even if he could establish a prima facie case, "the undisputed facts show that his termination would have occurred regardless of any discriminatory animus as [his] flagrant insubordination was the basis for his termination."

For the purposes of the instant motion, defendants do not dispute that plaintiff engaged in protected activities. Nor do defendants dispute for present purposes that plaintiff has established adverse actions against him, namely, the Borough's disciplinary actions, including his suspensions with and without

pay, and his termination. Thus, the third element remains, whether the protected activities were a substantial or motivating factor in his termination.

Plaintiff must demonstrate that his protected activity was a "'substantial' or 'motivating factor' in the adverse action.'" *Infantino v. West Wyoming Borough*, 2013 WL 3972770, *3 (M.D.Pa. July 31, 2013) (quoting *Billman v. Corbett*, 2011 WL 605814 (E.D.Pa. Feb. 15, 2011). This final element requires a plaintiff to provide sufficient proof that the defendants (1) knew of his protected activity and, (2) that this knowledge was causally related to his termination. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 275 (3d Cir. 2007). Because plaintiff names seven individual members of Borough Council who voted for his termination as defendants, he must demonstrate that each of these defendants "individually participated or acquiesced in each of the alleged constitutional violations." Williamson v. City of Philadelphia, 169 F.Supp.3d 630, 633 (E.D.Pa. 2016)(citation omitted). "In order to demonstrate the requisite causal link, plaintiffs typically must allege either '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" Id. at 633-34 (citation omitted). "If a plaintiff relies on the temporal proximity to establish a causal connection, 'the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive ....'" Oden v. SEPTA, 137 F.Supp.3d 778, 791 (E.D.Pa. 2015) (citation omitted).

Moreover, "[i]t is important to emphasize that it is *causation, not*

18

*temporal proximity itself*, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation . . . is highly context-specific." *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3d Cir. 1997) (emphasis added). The passage of time "between a protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period." *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000).

Based on the undisputed facts of this case, the court finds that plaintiff has failed to establish a casual connection between his protected activities and the adverse employment actions taken against him by defendants.

To the extent plaintiff claims that the Council Members retaliated against him based on his political activities and his support for their opponents during the 2014 election, he has not produced sufficient evidence showing that he was suspended and terminated because he opposed the Borough Council members in the election. In fact, as defendants state, "the record only shows that two of the seven Council Members were aware of his support for individuals on the opposition's ticket."

Nor did plaintiff produce evidence to support his contention that the Council Members knew that he was the individual behind the Facebook Page, Dickson City Deception, until after he announced that he was the poster on October 20, 2014. Plaintiff made this announcement after he was placed on paid administrative leave for his altercation with Forconi and after

19

the investigation into that incident had begun. This lack of temporal proximity between the Facebook postings and the allegedly retaliatory action, i.e., suspension with pay, is fatal to plaintiff's retaliation claims to the extent they rely upon the postings and the initial adverse action taken against him. *See* Williamson, 169 F.Supp.3d at 633-34. Even though plaintiff alleges that it was common knowledge well before his suspension and his October 20 announcement that he was behind the Facebook Page, and that he identified himself on the Page in a post dated "October 16/17, 2014", he fails to establish that the individual defendants had any knowledge he was making the posts before October 20. Further, plaintiff fails to prove that any of the defendant Council Members read the "October 16/17, 2014" post.

No doubt that his announcement that he was behind the Facebook postings was made before he was terminated on November 20, 2014. However, as discussed below, plaintiff fails to show that any of his protected activities were the cause of any of the adverse employment actions defendants took against him.

Insofar as plaintiff contends that his critical public comments at the Borough Council Meetings were a motivating factor in his termination, defendants argue that the time lapse between this protected activity and his suspension and termination is too long to establish a retaliatory causal link. Defendants state that "[t]he last time Plaintiff spoke at the Council Meeting prior to his termination was on September 4, 2014", and "[t]his was approximately 2 months prior to his suspension and subsequent termination."

Indeed, "the timing of alleged retaliatory conduct can, by itself, support a finding of causation only when temporal proximity between the protected activity and adverse action is unduly suggestive." McGhee v. Thomas Jefferson Univ. Hosp., 2013 WL 4663541, *6 (E.D.Pa. Aug. 29, 2013) (internal quotations omitted); *see also* Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (Third Circuit found that two months between protected activity and adverse employment action was not unduly suggestive). The court finds that plaintiff has not shown unduly suggestive timing with respect to the 2-month gap between his last comments at a Council Meeting and his suspension. Nor does the court find that plaintiff can show a sufficient causal connection between any of his protected activity and his suspension and termination.

The Third Circuit has noted that courts should rigorously enforce the causation requirements in cases involving public offices, stating:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. . . . Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

*DeFlaminis*, 480 F.3d at 267-68.

Defendants state that plaintiff's claims raised in Counts I and II of his complaint "fail as a matter because he cannot establish that a causal nexus between his alleged protected activity and the alleged adverse employment action exists", and that "the undisputed facts of record reveal that the Borough's disciplinary investigation, Plaintiff's suspension and eventual termination, were solely in response to Plaintiff's altercation with [Forconi] and his failure to cooperate in the investigation thereafter." They also point out that there is also no dispute that plaintiff's conduct during the October 16, 2014 incident with Forconi, his superior, was inappropriate behavior in the work place.

The overwhelming undisputed evidence shows that plaintiff repeatedly failed to comply with the Borough's investigation regarding the October 16, 2014 incident between himself and Forconi, and, that he was warned what consequences his failure to comply would bring. As mentioned, plaintiff must show that each defendant Council Member personally retaliated against him because of his protected activities. Defendants' evidence, including the November 20, 2014 statement read at the Borough Council Meeting regarding the reason for terminating plaintiff and Mecca's letter to plaintiff formally terminating him, show that plaintiff's insubordination and his failure to report for his scheduled employee interviews were the reasons for his termination. (*See* defendants' Exs. 8-14).

To the extent plaintiff relies upon beliefs regarding the Council Members' alleged animosity toward him and the testimonies of DPW

supervisor Lukasik as well as DPW workers Kevin Cochrane, Joseph Chowanec and James Zielinski, (*see* Doc. 28 at 11-13), as "direct evidence" to support his retaliation claims, the court finds that their unsupported opinions and beliefs that plaintiff's protected activities, including his union activities and outspoken criticisms at Council meetings, were the cause of his suspension and termination are not sufficient to overcome defendants' undisputed evidence. Plaintiff's witnesses state that they "believe" and "think" plaintiff was targeted by the Council Members and fired since he did not agree with them at Council meetings, since he campaigned for other candidates, since he was union steward, and due to his Facebook posts. However, these witnesses do not cite to specific evidence showing that plaintiff's suspension and termination were actually caused by any of his protected activities. To establish his First Amendment retaliation claims, plaintiff must demonstrate causation by showing that his protected activity was a substantial or motivating factor behind the defendants' alleged retaliation. Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006). "The plaintiff[] must do more than allege the 'mere possibility of misconduct.'" Killion, 2016 WL5417193, *14. It is well-settled that "inferences based upon speculation or conjecture, ..., do not create a material factual dispute sufficient to defeat entry of summary judgment." Volek v. Redevelopment Authority of County of Fayette, 24 F.Supp.3d 473, 476 (W.D.Pa. 2014) (citation omitted).

Plaintiff also relies upon an email from Borough Council's labor attorney to try and show defendants' had animus towards him and he states that:

[he has] a[n] [email from attorney Rudolf] dated October 29, 2014 and a document noting Plaintiff's termination dated October 31, 2014. In the October 29, 2014 document, Defendants' own lawyer showed Borough Council's animosity toward Plaintiff. Specifically, he stated, "… Moreover, he regularly trashes various Borough officials on a Facebook page. Finally, he has filed a series of meritless BS grievances which now total eight, I believe. … Will you pull the outstanding grievances? Will he and other Union members stop trashing Borough Council in social media? (Exhibit "A"). Plaintiff's termination was decided on October 31, 2014, just two days later after Defendants' lawyers asked Plaintiff to pull his BS grievances and stop posting on Facebook. The document states, that Borough Manager had a call with Defendants' lawyers "… RE: CHANGE IN COUNCIL'S PLANS RE: KASZUBA TERMINATION …" (Exhibit "B"; KASZUBA, Tr. at 391-392) (emphasis added).

Defendants state that attorney Rudolf's email is not admissible under FRE 408 since it "contains statements made as part of negotiations in the prior labor dispute", i.e., they were made "in the course of compromise negotiations with the Union's attorney regrading the handling of plaintiff' grievance and related labor dispute." "The application of [FRE 408], ..., 'is limited to evidence concerning settlement or compromise of a claim, where the evidence is offered to establish liability, or the validity or amount of the claim.'" BTG International Inc. v. Bioactive Laboratories, 2016 WL 3519712, *8 (E.D.Pa. June 28, 2016) (quoting Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 526 (3d Cir. 1995)). However, "Rule 408 does not bar the introduction of settlement discussions if offered for 'another purpose,' such as to show *a party's* knowledge or intent." Id. (emphasis added). The statements of attorney Rudolf in his email pertaining to his negotiation with the Union attorney over plaintiff's grievance do not establish motive of any defendant in

this case.

Even if plaintiff can rely upon the statements in attorney Rudolf's email which show that he may have had animus toward plaintiff based on his criticism of Council and the grievances he filed, this attorney is not a party defendant in this case and he did not have a vote regarding plaintiff's termination. As defendants state, the statements of attorney Rudolf are not admissions of the Council Members or the Borough. Nor can plaintiff show causation by trying to attribute the statements of attorney Rudolf to defendants themselves. Rather, plaintiff must establish the causal connection for his retaliation claims to the actions of defendants, i.e., plaintiff has to show that his protected conduct was a substantial or motivating factor in the adverse employment actions taken by each one of the defendant Council Members. Rode v. Dellarciprete, 845 F.2d 1195, 1204 (3d Cir. 1988). Further, as defendants point out, even if Council Members were aware of plaintiff's protected activity, this does not establish causation with respect to his retaliation claims. See *Galli*, 490 F.3d at 275 (Third Circuit held that plaintiff "must produce evidence tending to show that the [defendant] knew [of her protected activity] and fired her as a result.").

Plaintiff also argues that it was not his failure to attend the interview or his altercation with Forconi since Forconi testified that "I think it was events in general that had been happening leading up to that day." Despite the stated testimony of Forconi, who did not have a vote in plaintiff's termination, defendants' evidence demonstrates the reasons why plaintiff was suspended

and terminated by the Council Members, who actually were the decision makers, were his insubordination and repeated failure to attend his employee interviews.

Temporal proximity in addition to other evidence, such as a pattern of antagonism, can also show a causal link to the alleged retaliatory action. Killion, 2016 WL 5417193, *14 (citations omitted). As explained above, the court finds that plaintiff has not presented sufficient evidence that there was a pattern of antagonism against him by the defendants, such as having a long history of being disciplined and retaliated against by defendants. In fact, plaintiff states that he had not been disciplined in the past during his over 20 years of working for the Borough. Also, Zielinski's testimony that plaintiff was once wrongfully accused of being in the Borough building before work hours, by who he believed to be Forconi, when it was actually someone else in the building, does not show a pattern of antagonism by defendant Council Members. Nor do comments by defendants' labor attorney show a pattern of antagonism by defendant Council Members, as explained.

Moreover, assuming *arguendo* that plaintiff had proved causation as well as the other elements of a retaliation claim, the undisputed evidence shows that defendants would have taken the same adverse employment actions against plaintiff despite his protected activities. "To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both

are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." Dougherty v. School Dist. of Phila., 772 F.3d 979, 986 (3d Cir. 2014) (citing Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009)). "It is by now axiomatic that a plaintiff in an employment retaliation case may avoid summary judgment by offering evidence that discredits the reasons articulated by the defense for the adverse employment action." *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013).

Defendants succinctly summarize the evidence, (Doc. 24 at 18-19), as follows:

> As a result of th[e] [the October 16, 2014 incident between plaintiff and Forconi], Plaintiff was put on paid administrative leave and directed to remain available during work hours for an employment interview. However, when contacted for the employment interview, Plaintiff refused to appear. [Forconi] explicitly advised Plaintiff that his continued failure to appear constituted insubordination and if he failed to appear again that his termination would be recommended. Despite this express warning, Plaintiff refused to appear for an employment interview regarding [the incident].
>
> After providing Plaintiff with three opportunities to be interviewed, [Forconi] sent Plaintiff a *Loudermill* Notice notifying him of his intention to recommend termination and providing Plaintiff with yet another opportunity to provide [Forconi] with any facts which may influence his decision to take disciplinary action against Plaintiff. Plaintiff did not respond to this letter.
>
> On November 20, 2014, Borough Council voted to terminate Plaintiff. In its statement, Borough Council explained that Plaintiff's termination was the result of his flagrant insubordination and the Borough's inability to retain an employee "who picks and chooses what directives he wants to follow or when he wants to follow them."

Defendants have established by the undisputed evidence that plaintiff was suspended and terminated due to his insubordination and his repeated failure to comply with the investigative process after his incident with Forconi. (*See* defendants' Exs. 8-14). Despite the warnings regarding his failure to comply with the directives to attend his interviews, plaintiff continued to ignore the directives. Insofar as plaintiff indicates that he was worried about the purpose of the interview with Chief Bilinski and Forconi and that he was advised by counsel and his union representative not to appear, he was nonetheless still required to appear and comply with defendants' directives. Further, during his interview, plaintiff would have been free to answer any questions, including giving admissions and denials, and he could have refused to answer questions as well. Additionally, if plaintiff was disciplined after his interview, he had the grievance process in the CBA available to him.

As such, even had the plaintiff made out a prima facia case of retaliation, defendants have produced sufficient evidence that "the same employment action would have been taken even in the absence of the protected activity." *Galli*, 490 F.3d at 271. Further, plaintiff has failed to discredit the reasons proffered by defendants for his suspensions and termination. Thus, because plaintiff has failed to sufficiently prove causation, defendants are entitled to summary judgment on his First Amendment retaliation claims in Counts I and II of his complaint.

In Count III of his complaint, plaintiff raises retaliation claims based upon his activities as union steward, including the filing of grievances and

disputes with defendants on behalf of the union DPW workers. Defendants state that "[p]resenting grievances and addressing issues on behalf of union members as part of one's official duties as union steward, such as disputes over the Union prescription benefits, are not matters of public concerns; and therefore, do not constitute protected activity for the purposes of the First Amendment analysis." No doubt that a public employee asserting a First Amendment retaliation claim must show that his protected speech was regarding a matter of public concern. *See* Williamson, 169 F.Supp.3d at 633-34. Thus, in order for plaintiff's activities as union steward to constitute First Amendment protected speech, "'[he] must be speaking as a citizen, on a matter of public concern' and the employer 'did not have an adequate justification for treating the employee differently from any other member of the general public.'" Oden, 137 F.Supp. 3d at 794 (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006)); *see also* Thomas, 626 Fed.Appx. at 388 (Third Circuit found that plaintiff's "union grievances are not protected because they do not involve matters of public concern."). " T o involve a matter of public concern, speech must relate to 'a subject of general interest and of value and concern to the public,' whether it is a 'matter of political, social or other concern to the community' or 'a subject of legitimate news interest.'" De Ritis v. McGarrigle, 861 F.3d 444, 455 (3d Cir. 2017) (citation omitted). "By contrast, speech does not involve a matter of public concern when it relates solely to 'mundane employment grievances.'" Id. (citation omitted).

Plaintiff also characterizes his union activities as a freedom of association claim and states that the public concern requirement does not apply to First Amendment freedom of association retaliation claims. However, "[t]he Third Circuit has not yet definitively decided the question." Killion , 2016 WL 5417193, *6 (citing LaPosta v. Borough of Roseland, 309 Fed.Appx. 598, 603 (3d Cir. 2009) (recognizing that it "is an open question in this Circuit" "as to whether the public concern requirement applies equally to free association claims")). Regardless, "[t]he Third Circuit has, ..., repeatedly applied the public concern requirement to freedom of association claims that are closely linked to or mere extensions of freedom of speech claims", id. at *7, such as those raised by plaintiff in the instant case.

Nonetheless, "constitutional protection is not automatically granted to all speech and conduct by union members." Id. at *8 (citing Thomas v. Delaware State Univ., 626 Fed.Appx. 384, 388 (3d Cir. 2015) ("While it is true that union activities may sometimes touch on a matter of public concern, ... it is not the case that all union-related grievances do[.] [Plaintiff's] grievances related to 'working conditions and other issues in union members' employment' and [Plaintiff] offers nothing that would transform those personnel matters into issues of interest to the broader community.")). Additionally, "[w]hether an exercise of speech is on a matter of public concern is a question of law." Id. at *11 (citation omitted).

Initially, the court finds that any employment grievances which plaintiff presented to defendants involving his personal issues are not protected

speech since they do not pertain to a matter of public concern. Oden, 137 F.Supp. 3d at 794 (citations omitted); De Ritis, 861 F.3d at 455 (Court held that personal grievances are the types of matters that do not receive First Amendment protection.).

However, the court finds that plaintiff's activities as union steward, including any grievances he filed with defendants complaining about the new Borough building as well as complaints about Council spending taxpayers' money regarding other work performed in the Borough, is protected speech since it pertains to matters of public concern. "[T]he content of speech is on a matter of public concern where it 'relate[s] primarily to the way in which a government office [i]s serving the public,' such as a government 'wasting taxpayer's money.'" Killion , 2016 WL 5417193, *11 (citations omitted). Thus, this stated activity in which plaintiff engage as union steward was protected speech.

Even though plaintiff's speech regarding the union and the grievances about the Borough's expenditures of tax dollars was protected, plaintiff cannot prevail on his First Amendment retaliation claim pertaining to his union activities since, as discussed above, the court finds that plaintiff has failed to show that this speech was "a substantial or motivating factor" in the defendants' decision to terminate him and, that defendants have shown that despite this speech, they still would have terminated him. *See* De Ritis, 861 F.3d at 453 n.

Moreover, since the plaintiff has failed to state any cognizable First

Amendment retaliation claim against any of the individual Council Member defendants, the plaintiff's claims for municipal liability under *Monell* against the Borough fail. With respect to the municipal defendant, the "first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989). Since the plaintiff has failed to establish any constitutional claim against the individual defendants, any constitutional claims against the Borough based on *Monell* also fail. *See* Bergdoll v. City of York, 515 Fed.Appx. 165, 171 (3d Cir. 2013) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986) ("[N]either *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when ... the officer inflicted no constitutional harm.")). *See also Everett*, 94 F.App'x at 956 ("[B]ecause there was no genuine issue of material fact with respect to the liability of defendants", i.e., the Council Members, "there was no basis for imposing liability upon [the Borough]. In order for there to be municipal liability under 42 U.S.C. §1983, the plaintiff must plead and prove a violation of his Constitutional rights."); Killion, 2016 WL 5417193, *14 n. 7. As such, summary judgment is appropriate for defendant Borough with respect to plaintiff's *Monell* claims against it.

Finally, since plaintiff failed to establish a violation of his First Amendment rights, defendants are also entitled to summary judgment with

respect to his claims for punitive damages in Counts I-III.[5]

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment, (Doc. 23), is **GRANTED** with respect to all of plaintiff's constitutional claims in Counts I-III of his complaint. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: September 19, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1239-01.wpd

---

[5]Based on the above discussion, there is no need to address defendants' penultimate argument that the Council Members are entitled to qualified immunity.